# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Alicia Alshehabi, on behalf of herself ) <br> and all others similarly situated, ) <br>   ) <br>               Plaintiff, ) <br>   ) <br>               v. ) <br>   ) <br> Hymans Seafood Company, Inc.; ) <br> Eli Hyman, individually; and Brad ) <br> Gena, individually, ) <br>   ) <br>              Defendants. ) <br>                            ) | C.A. No.: 2:14-cv-2724-PMD <br><br> **ORDER** |

This matter is before the Court on Hymans Seafood Company, Inc., Eli Hyman, and Brad Gena's (collectively "Defendants") motions for partial summary judgment (ECF Nos. 227, 228, 229, & 230). Also before the Court are Plaintiff's motions for partial summary judgment (ECF Nos. 226 & 231). These matters are ripe for consideration.[1]

## BACKGROUND

On July 3, 2014, Plaintiff commenced this action, on behalf of herself and others similarly situated, seeking, *inter alia*, unpaid overtime compensation and minimum wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiffs and those who have subsequently given notice of their consent to join this action (collectively "Plaintiffs") are current or former employees of Defendant Hymans Seafood Company, Inc. ("Hymans Seafood"). Plaintiffs assert two FLSA causes of action against Defendants. First, they primarily allege that Defendants paid them less than the statutory minimum wage by improperly claiming a tip credit while utilizing an invalid "tip pool," in violation of 29 U.S.C. §§ 203(m), 206. Second,

---

1. Due to the number of pending motions, the Court omits its ordinary recounting of procedural history as it would serve no useful purpose. The full procedural history may be found on PACER or CM/ECF.

Plaintiffs assert that Defendants failed to pay them the proper overtime wage, in violation of 29 U.S.C. § 207, by "knowingly allow[ing] its servers to 'work off the clock.'" (Compl., ECF No. 1, at ¶ 22.)

In the six pending motions, the parties raise a number of issues. The Court will first address the issues of liquidated damages and the three-year statute of limitations, and then it will address the other motions.

## **LEGAL STANDARD**

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

*Plaintiffs' Motion for Partial Summary Judgment & Defendants' Motion for Partial Summary Judgment (ECF Nos. 226 & 228)*

Plaintiffs and Defendants seek summary judgment on the question of whether Defendants' invalid breakage[2] fees constituted a willful violation of the FLSA. If Plaintiffs can prove that Defendants' violation was willful, the FLSA provides a three-year statute of limitations. On the other hand, if Defendants' violation was not willful, the two-year statute of limitations applies. *See* 29 U.S.C. § 255(a).

An FLSA violation is "willful if the defendant 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.'" *Linnville v. RW Props.*, No. 6:13-cv-542-BHH, 2015 WL 196372, at *5 (D.S.C. Jan. 15, 2015) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). The employee bears the burden of proving that a violation is willful. *Id.* "[W]illfulness is, conceptually, a question of fact." *Regan v. City of Charleston*, 142 F. Supp. 3d 442, 463 (D.S.C. 2015); *see also Linnville*, 2015 WL 196372, at *5. Accordingly, "'a plaintiff must present sufficient evidence of willfulness to survive summary judgment.'" *Linnville*, 2015 WL 196372, at *5 (quoting *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 2d 612, 617 (E.D. Va. 2014)).

This Court has previously ruled it is inappropriate to determine willfulness where liability has not yet been determined. *See Reynolds v. Wyndham Resorts Inc.*, No. 4:14-cv-2261, 2016 WL 362620, at *4 (D.S.C. Jan. 29, 2016) (declining to reach defendant's arguments as to

---

2. Hymans Seafood charged servers and bartenders a breakage fee to compensate for broken or missing plates, glasses, and silverware. At the end of their shifts, Plaintiffs participated in what was called "tip-out." At that time, Plaintiffs would go to a designated manager and pay certain fees out of the tips they earned during their shift. Although the categories of tip-out varied depending on whether the employee was a server or bartender, Plaintiffs were required to use the tips they earned during their shift to pay for a number of different things, including fees for breakage, the salad preparer, and the dishwasher/busser. Plaintiffs were also required to pay one percent of their food sales and one percent of their alcohol sales into a tip pool that would be distributed to other Hyman's Seafood employees.

willfulness where liability had not yet been determined); *Regan*, 131 F. Supp. 3d at 558 (same). Here, Defendants have admitted liability only as to the breakage fee that servers and bartenders were required to remit. Therefore, Defendants' breakage fee is the only violation on which the Court could make a willfulness determination. Because significant jury issues on liability remain, the Court cannot grant Plaintiffs' motion on willfulness. However, the Court agrees that Plaintiff has made a sufficient showing for a jury to conclude that Defendants' breakage fee was a willful violation of the FLSA. Consequently, Defendants' motion for summary judgment on the question of willfulness is also denied. Plaintiff has presented evidence that the individual Defendants, as well as members of Hymans Seafood's management team, were made aware that their tip-out policy was illegal. Additionally, Plaintiff has submitted deposition testimony in which Mr. Hyman admits he did not seek a legal opinion on his restaurant's tip-pooling practices. Courts have found similar actions sufficient to constitute reckless disregard for whether the policy violated the FLSA. *See Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008) (stating that reckless disregard is the "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]"); *Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1376 (S.D. Ga. 2015) (stating that a reasonable jury could find a willful violation where the jury could infer that the defendant "'buried his head in the sand' to his and the company's FLSA duties").

Plaintiffs and Defendants also seek summary judgment on various issues related to the FLSA's liquidated damages provision. *See* 29 U.S.C. § 260. First, Defendants request that the Court permit liquidated damages only on the amounts contributed to the tip pool that raise Plaintiffs' wages to the minimum wage. Defendants argue that all other money paid into the tip pool should not be subject to liquidated damages. The Court finds that it is premature to

determine liquidated damages at this time. There are questions of fact as to Defendants' good-faith defense and, without determining liability as to all alleged violations, the Court cannot determine whether Plaintiffs are entitled to liquidated damages. *See Regan*, 142 F. Supp. 3d at 463; *Linnville*, 2015 WL 196372, at *5. Accordingly, both Plaintiffs' and Defendants' motions are denied as they pertain to liquidated damages.

*Defendants' Motion for Partial Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment (ECF Nos. 227 & 231)*

Plaintiffs and Defendants have each filed motions for partial summary judgment pertaining to the consent order the Court entered on January 20, 2015, which stated, "Defendants consent that Plaintiffs have, as an available remedy to them . . . the ability to recover all tips he or she contributed to the tip pool. This remedy is outlined in Fact Sheet #15 from the Wage & Hour Division of the U.S. Department of Labor." (Order, ECF No. 82, at 1–2.) The parties did not define "the tip pool" in their consent order. Accordingly, Defendants now contend that phrase means only the invalid tip pools as discussed in the referenced fact sheet. Plaintiffs, on the other hand, argue that it means every tip pool to which Plaintiffs contributed. Importantly, the fact sheet states "[t]he requirement that an employee must retain all tips does not preclude a valid tip pooling or sharing arrangement among employees who customarily and regularly receive tips." (Defs.' Mot. Partial Summ. J., Ex. 4-A, Fact Sheet #15, ECF No. 147-4, at 3.) In support of their interpretation, Defendants also assert that Plaintiffs' counsel drafted the consent order. Thus, the implication is that any ambiguity contained therein must be construed against Plaintiffs. Plaintiffs assert that throughout the litigation, Defendants have used the phrase "the tip pool" to mean each of the various tip pools to which Defendants' employees were required to

5

contribute their tips. Additionally, Plaintiffs assert that the plain meaning of the phrase "the tip pool" cannot be "the invalid tip pools."

"[R]ules of contract construction appl[y] when determining the scope of a consent decree." *Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 319 (4th Cir. 2000). "The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties." *Chan v. Thompson*, 395 S.E.2d 731, 734 (S.C. Ct. App. 1990) (citing *RentCo., a Div. of Fruehauf Corp. v. Tamway Corp.*, 321 S.E.2d 199 (S.C. Ct. App. 1985)). "'Where the agreement in question is a written contract, the parties' intention must be gathered from the contents of the entire agreement and not from any particular clause therein.'" *Parker v. Byrd*, 420 S.E.2d 850, 852 (S.C. 1992) (quoting *Thomas-McCain, Inc. v. Siter*, 232 S.E.2d 728, 729 (S.C. 1977)). Finally, contract interpretation is a question of law, to be decided by the court. *Liberty Mut. Ins. Co. v. Westport Ins. Co.*, 664 F. Supp. 2d 587, 593 (D.S.C. 2009) (citing *Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997)). Thus, the interpretation of the consent order is a question of law.

Applying these contract rules to the consent order, the Court concludes that Defendants' interpretation of the order is correct. Upon review of the Department of Labor's fact sheet, which the parties explicitly referenced in the consent order with respect to the available remedy, the Court concludes that the parties did not intend to agree that Plaintiffs could recover tips paid into a valid tip pool. Taking the entire consent order into account, it is apparent that the parties intended to use the fact sheet to define the scope of the remedy to which Defendants were consenting. The reference to the fact sheet clarifies the parties' intention to tie the scope of Defendants' consent to the fact sheet's discussion of invalid tip pooling arrangements. Moreover, the Plaintiffs' interpretation of the consent order would create a remedy that does not

exist under the FLSA. The Court cannot imagine that, in these adversarial proceedings, Defendants volunteered to give Plaintiffs more than the law requires. Accordingly, Defendants' Motion is granted[3] and Plaintiffs' Motion is denied.

*Defendants' Motions for Summary Judgment (ECF Nos. 229 & 230)*

The final pending motions for summary judgment pertain to Plaintiff Suter's and Plaintiff Flaquer's claims for retaliation. Due to their substantial similarity, the Court addresses both motions together.

After an employee has filed a suit under the FLSA, it is unlawful "to discharge or in any other manner discriminate against" that employee. 29 U.S.C. § 215(a)(3). If an employee is discharged, he or she can make a case for retaliation if he or she shows that "(1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008). Defendants concede that both Suter and Flaquer meet the first two elements. Thus, the only issue is whether there is a causal connection between the lawsuit and their termination.

"[A]n adverse employment action is unlawful under the FLSA's anti-retaliation provision only if it would not have occurred 'but for' the employer's retaliatory intent." *Hackney v. Arlington Cty. Police Dep't*, 145 F.3d 1324, 1998 WL 230849, at *4 (4th Cir. 1998) (table). "[A] plaintiff asserting a cause of action under § 215(a)(3) may proceed under either of two methods of proof." *Id.* "First, where the plaintiff has produced direct evidence that her employer was motivated by retaliatory animus, she may proceed under the 'mixed motive' proof

---

3. The parties have not asked the Court to determine which tip pools are valid, and the Court declines to do so *sua sponte*. It appears that there are unresolved factual disputes as to the job duties of certain classes of employees who might or might not qualify to share in a tip pool under the FLSA.

scheme enunciated by the Supreme Court . . . ." *Id.* "Alternatively, where the plaintiff relies on circumstantial evidence to prove that retaliatory animus motivated the employer to take the disputed adverse employment action, she must proceed under the burden[-]shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Id.* "Under this [burden-shifting] standard, a plaintiff must first establish a prima facie case of retaliation." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (citing *Richmond v. Oneok, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997)). "The burden then shifts to the employer to offer a legitimate reason for the plaintiff's termination." *Id.* (citing *Richmond*, 120 F.3d at 208). "Once the employer offers such a reason, the burden the shifts back to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual." *Id.* (quoting *Richmond*, 120 F.3d at 208) (internal quotation marks omitted). Because Suter and Flaquer have not produced any direct evidence of retaliatory animus, they must prove their retaliation claims under the *McDonell Douglas* burden-shifting scheme.

The Court concludes that Suter and Flaquer have established a prima facie case of retaliation under the circumstances. However, Defendants have also shown that they had potentially legitimate reasons for terminating both Suter and Flaquer. On the day Suter was terminated, she was late to work, she mixed up credit cards, and she also was the subject of customer complaint that the customer had received "the worst service ever." (Defs.' Mot. Partial Summ. J., ECF No. 229, at 3.) Defendants have presented evidence that the latter two offenses were stand-alone reasons for termination and that, on past occasions, Defendants had terminated other employees for those reasons.

8

Plaintiff Flaquer worked at Hyman's Seafood for some period of time until October 30, 2014. Flaquer then stopped working because he suffered a broken leg. In January 2015, Flaquer spoke with Walker, one of Defendants' managers, and told him that he would be ready to return to work in a couple of months. In response, Walker said "[t]hat's fine. Get better. Talk to you then." (Defs.' Mot. Partial Summ. J., Ex. 1, Flaquer Dep., ECF No. 230-1, at 12.) In February, Flaquer went to Hyman's Seafood and talked with Walker. During that conversation, Walker informed Flaquer that he was not going to hire him back and did not give him an explanation. In their motion, Defendants assert that he was not rehired because he was only an average server, was often hungover and unshaven, and had a bad attitude.

The Court concludes that Defendants' reasons for terminating Suter and not re-hiring Flaquer were potentially legitimate. Because Defendants have shown potentially legitimate reasons for Suter and Flaquer's terminations, those plaintiffs must now show that there is a genuine dispute of material fact as to whether Defendants' reasons for their terminations were pretextual. Here, the Court concludes they have done so for both claims of retaliation.

First, Suter has presented evidence that she swiped the wrong credit card for the wrong table about once a month and was never previously disciplined on any of those occasions. Additionally, she has testified that she arrived late approximately once a month and was never written up, and that there were other servers who arrived around the same time she did on the date of her termination but were not disciplined for their tardiness. Finally, Suter asserts that her write-ups on the date of her termination contain factually inaccurate information, including that Hyman's Seafood had to cover some of the cost of the meal she charged to the wrong credit card.

Next, although Flaquer did not work for Hyman's Seafood for several months while recovering from a broken leg, the Court finds that there are genuine issues of material fact as to

whether Flaquer quit his job or whether his employment was terminated when he attempted to return to work as a result of his participation in the present suit. Defendant Gena testified that someone who was an average server, hungover, unshaven, or who had a bad attitude should have many write-ups. However, Flaquer has shown that he never received a single write-up. Thus, although Defendants have shown several potentially legitimate reasons for firing Flaquer or failing to re-hire him, he has provided evidence creating a genuine issue of material fact as to whether those reasons were pretextual.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendants' Motion for Partial Summary Judgment (ECF No. 227) is **GRANTED** and all other motions for summary judgment (ECF Nos. 226, 228, 229, 230, & 231) are **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**June 30, 2016**
**Charleston, South Carolina**